IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALASKA NATIONAL INSURANCE COMPANY, an Alaska corporation,<br><br>    Plaintiff,<br><br>v.<br><br>NORTHWEST STEEL FAB, INC., a Washington corporation, and M.A. MORTENSON COMPANY, a Minnesota corporation, and PIERCE COUNTY, a political subdivision of Washington State,<br><br>    Defendants. | No.:<br><br>COMPLAINT FOR DECLARATORY JUDGMENT<br><br>JURY DEMAND |

Plaintiff Alaska National Insurance Company files this Complaint for Declaratory Judgment against Defendants Northwest Steel Fab, Inc., M.A. Mortenson Company, and Pierce County, and alleges the follows.

## NATURE OF THE ACTION

This is an insurance coverage action seeking declaratory relief under 28 U.S.C. §§ 2201 and 2202. More specifically, Alaska National seeks a determination that it has no duty to defend or indemnify Northwest Steel Fab, Inc. (NSF) or M.A. Mortenson Company (Mortenson) with respect to claims against them in an action initially filed in Pierce County

Superior Court. That case is entitled *Pierce County v. M.A. Mortenson Company* (Case No. 18-2-13976-2), and was removed to the Western District of Washington, Tacoma (Case No. 3:19-cv-05041-RJB). Later, it was transferred to arbitration administered by the Judicial Arbitration and Mediation Services, Inc. (Case No. 1160022955) (Underlying Arbitration). A copy of the original Complaint filed by Pierce County against Mortenson and the Third-Party Complaint filed against NSF are attached as **Exhibit A** and **B**, respectively.

## I. THE PARTIES

1.1   Plaintiff Alaska National Insurance Company is an Alaska corporation, with its principal place of business in Anchorage, Alaska.

1.2   Defendant Northwest Steel Fab, Inc. is a Washington corporation and, upon information and belief, has its principal place of business in Deer Park, Washington.

1.3   Defendant M.A. Mortenson Company is a Minnesota corporation and, upon information and belief, has its principal place of business in Minneapolis, Minnesota.

1.4   Defendant Pierce County is a political subdivision of the state of Washington, with the authority to be sued in this action under RCW 36.01.010.

## II. JURISDICTION AND VENUE

2.1   This court has subject matter jurisdiction over this dispute. Alaska National is a citizen of Alaska. Defendants, including Pierce County, are citizens of Washington and Minnesota. Accordingly, diversity of citizenship exists between the parties under 28 U.S.C. §1332(a).

2.2   Venue is proper in the Western District of Washington, at Tacoma, under LCR 3(e)(1), because the events giving rise to this action occurred in Pierce County, Washington.

## III. SUMMARY OF RELEVANT FACTS

**A.   NSF purchased insurance policies from Alaska National.**

3.1   NSF purchased three consecutive Commercial General Liability policies from Alaska National. These policies were in effect as follows:

- 14G PS 32145 – July 1, 2014 to July 1, 2015 (2014-15 CGL Policy)
- 15G PS 32145 – July 1, 2015 to July 1, 2016 (2015-16 CGL Policy)
- 16G PS 32145 – July 1, 2016 to July 1, 2017 (2016-17 CGL Policy)

(Alaska National refers to these policies, together, as the CGL Policies). The liability limit under each of the CGL Policies is $2 million products-completed operations and $1 million each occurrence. A copy of each policy is attached as **Exhibit C**, **D**, and **E**, respectively.

3.2   In addition to the CGL Policies, NSF purchased three Commercial Liability Umbrella policies from Alaska National that were in effect during the same consecutive policy dates and years as the CGL Policies:

- 14G LU 32145 – July 1, 2014 to July 1, 2015 (2014-15 CLU Policy)
- 15G LU 32145 – July 1, 2015 to July 1, 2016 (2015-16 CLU Policy)
- 16G LU 32145 – July 1, 2016 to July 1, 2017 (2016-17 CLU Policy)

(Alaska National refers to these policies, together, as the CLU Policies). The liability limit under each of these CLU Policies is $3 million per occurrence. A copy of each policy is attached as **Exhibit F**, **G**, and **H**, respectively.

3.3   The insurance coverage afforded by the CGL Policies and the CLU Policies is governed by policy forms that are substantially similar in each of the three policy years.

**B.   Mortenson and NSF entered into a subcontract that included the procurement of insurance.**

3.4   Pierce County is the owner of the Chamber Creek Regional Wastewater Treatment Plant, located in University Place, Washington (the Project). Pierce County contracted with Mortenson such that Mortenson would supply materials and labor for the

1  Project, as the general contractor.

2       3.5    In February 2020, Mortenson and NSF entered into a subcontract under which
3  NSF agreed to supply coated steel beams and labor for the Project (Agreement). A copy of
4  the Agreement is attached as **Exhibit I**, respectively.

5       3.6    As part of this Agreement, NSF agreed to add Mortenson as an additional
6  insured under NSF's insurance, including NSF's insurance with Alaska National.

7  **C.    NSF and Mortenson tendered their defense against and indemnity for the claims against them in the Underlying Arbitration to Alaska National.**
8

9       3.7    Between February 26, and April 17, 2015, NSF supplied the coated steel
10 beams to Mortenson per the Agreement. On June 12, 2016, however, Mortenson notified
11 NSF of alleged failures of the coating on these beams.

12      3.8    On May 9, 2019, nearly three years after Mortenson notified NSF of the
13 alleged coating failures, NSF submitted a claim to Alaska National seeking defense and
14 indemnity coverage under the CGL Policies for Mortenson's third-party claims, including for
15 indemnification, against NSF.

16      3.9    On December 11, 2020, Mortenson submitted a claim to Alaska National, as
17 an additional insured, seeking defense and indemnity coverage for Pierce County's claims
18 against Mortenson in the Underlying Arbitration.

19      3.10    Alaska National agreed to defend both NSF and Mortenson under a
20 reservation of rights.

21 **D.    The CGL Policies do not cover, and specifically exclude, coverage for the claims against NSF and Mortenson in the Underlying Arbitration.**
22

23      3.11    The claims against NSF and Mortenson in the Underlying Arbitration are
24 insufficient to trigger coverage under the CGL Policies.

25      3.12    These policies provide coverage for "property damage." The insuring
26 agreement related to this type of coverage reads as follows:

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.   INSURING AGREEMENT**

    **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.[1]

3.13   There is no dispute that property damage is covered under the CGL Policies. There are limitations, however, on this coverage. Coverage applies to property damage only if:

    **(2)**   The "property damage" occurs during the policy period; and

    **(3)**   Prior to the policy period, no insured listed under Paragraph 1 of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the . . . "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that . . . the "property damage" occurred, then any continuation, change or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

3.14   In this case, NSF supplied the steel beams between February and April 2015, so there could not have been covered property damage occurring before that time. Further,

---

[1] This and the other CGL policy language quoted in this Complaint is taken from the 2015-16 CGL Policy.

NSF and Mortenson were both aware of alleged coating failures—potential property damage—as early as June 12, 2016, which was before the latest policy commenced on July 1, 2016. Neither NSF nor Mortenson, however, reported the property damage until much later. Accordingly, coverage under the 2014-15 CGL Policy and the 2016-17 CGL Policy cannot apply. Only the 2015-16 CGL Policy can potentially provide coverage for the claims against NSF and Mortenson.

3.15   Even if there was coverage for property damage in each of the CGL Policies, there are exclusions in these policies that nevertheless defeat coverage. These exclusions read, in relevant part, as follows:

> **2.    Exclusions**
>
> This insurance does not apply to:
>
> *    *    *
>
> **k.**    Damage To Your Product
>
> "Property damage" to "[NSF's] product" arising out of it or any part of it.
>
> **l.**    Damage To Your Work
>
> "Property damage" to "[NSF's] work" arising out of it or any part of it and included in the "products-completed operations hazard[.]"

3.16   The CGL Policies define "[NSF's] product" to mean, in relevant part, "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed" by NSF.

3.17   The CGL Policies define "[NSF's] work" to mean, in relevant part, "[w]ork or operations performed by [NSF] or on [NSF's] behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations."

3.18  These exclusions, then, defeat coverage for property damage to the beams supplied by NSF, themselves. These beams qualify as either NSF's work, NSF's product, or both. Yet, this is the only type of property damage at issue in the Underlying Arbitration. Accordingly, these exclusions defeat coverage for the claims brought against NSF by Mortenson and for those claims brought against Mortenson by Pierce County.

3.19  Further, another exclusion in the CGL Policies likewise defeats coverage. This exclusion reads as follows:

> **2.  Exclusions**
>
> This insurance does not apply to:
>
> \*   \*   \*
>
> **m.**  Damage To Impaired Property or Property Not Physically Injured
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> **(1)**  A defect, deficiency, inadequacy, or dangerous condition in "[NSF's] product" or "[NSF's] work"; or
>
> **(2)**  A delay or failure by [NSF] or anyone acting on [NSF's] behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "[NSF's] product" or "[NSF's] work" after it has been put to its intended use.
>
> \*   \*   \*
>
> The term "impaired property" is defined as:

> **8.** "Impaired property" means tangible property, other than "[NSF's] product" or "[NSF's] work", that cannot be used or is less useful because:
>
> **a.** It incorporates "[NSF's] product" or "[NSF's] work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> **b.** [NSF] have failed to fulfill the terms of a contract or agreement.
>
> [I]f such property can be restored to use by the repair, replacement, adjustment, or removal of "[NSF's] product" or ""[NSF's] work" or "[NSF's] fulfilling the terms of the contract or agreement.

3.20   Here, there is property damage to impaired property arising out of NSF's allegedly defective product or work. Accordingly, this exclusion bars coverage under the CGL Policies.

3.21   Although there is an exception to the exclusion, it does not apply under these facts. There has been no loss of use of other property surrounding the allegedly defective beams. Nor could the alleged physical injury to those beams be considered sudden and accidental.

3.22   Moreover, because the impaired property could be restored to use by the repair or replacement of NSF's physically-injured property—i.e., the beams—the exclusion applies.

E.   **The claims against NSF in the Underlying Arbitration are insufficient to trigger coverage under the CLU Policies, because the retained limit has not been met.**

3.23   The claims brought against NSF by Mortenson in the Underlying Arbitration are insufficient to trigger coverage under the CLU Policies. The insuring agreement in the CLU Policies reads as follows:

> **1.   Insuring Agreement**
>
>     **a.**  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of . . . "property damage" to which this insurance applies.[2]

3.24   The CLU Policies define "ultimate net loss" to mean "the total sum… that [NSF] becomes legally obligated to pay as damages by reason of settlement or judgments[.]"

3.25   And "retained limit," in turn, means "the available limits of 'underlying insurance' scheduled in the Declarations[.]"

3.26   In other words, the CLU policies provide umbrella or excess coverage above the limits provided in the CGL Policies.

3.27   The claims against NSF, however, have not triggered coverage under the CLU Policies because the retained limits under the CGL Policies—the "underlying insurance"—has not been met.  Accordingly, there cannot be coverage under the CLU Policies.

**F.   The claims against Mortenson in the Underlying Arbitration are insufficient to trigger coverage under the CLU Policies, because the retained limit has not been met.**

3.28   The CLU policies define who qualifies as an insured to include the following:

> **SECTION II – WHO IS AN INSURED**
>
>     \*   \*   \*
>
> **3.**  Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.
>
> Subject to Section **III** – Limits of Insurance, if coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the

---

[2] This and the other CLU policy language quoted in this Complaint is taken from the 2015-16 CLU Policy.

amount of insurance:

    a.    Required by the contract or agreement, less any amounts payable by any "underlying insurance"; or

    b.    Available under the applicable Limits of Insurance shown in the Declarations;

Whichever is less.

Additional insured coverage will not be broader than coverage provided by the "underlying insurance."

3.29    By virtue of the CGL Policies or the "underlying insurance," Mortenson is an additional insured under the CLU Policies.

3.30    Under Section 13.2 of the Agreement, NSF was to procure, maintain, and pay for commercial liability insurance, with a $5 million limit each occurrence, to include Mortenson as an additional insured. This falls within the limits of insurance available in each policy year, under both the CGL Policies and the CLU Policies, combined.

3.31    As with NSF, however, the claims against Mortenson have not triggered coverage under the CLU Policies because the retained limits under the CGL Policies—the "underlying insurance"—has not been met. Accordingly, there cannot be coverage under the CLU Policies.

## G. The CLU Policies do not cover, and specifically exclude, coverage for the claims against NSF and Mortenson in the Underlying Arbitration.

3.32    As discussed in Paragraphs 3.13 and 3.14, above, the only umbrella policy that could even potentially afford coverage for the claims against NSF and Mortenson is the 2015-16 CLU Policy.

3.33    Moreover, even if the claims against NSF or Mortenson met the retained limits in each of the CGL Policies, the CLU Policies contain the same limitations, conditions, and exclusions found in the CGL Policies. And, for the same reasons, there is no coverage under

the CLU Policies.

**H.   Alaska National is entitled to reimbursement of the defense costs it paid and continues to pay on behalf of NSF and Mortenson.**

3.34   Alaska National has the right to reimbursement of the defense costs it paid on behalf of NSF and Mortenson, according to the following language in the policies:

> B.   If we initially defend an insured ("insured") or pay for an insured's defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered by this insurance, we have the right to reimbursement for the defense costs we have incurred.[3]

3.35   Alaska National agreed to defend both NSF and Mortenson under a reservation of rights, including the right to reimbursement of those defense costs upon a finding of no coverage.  Because there is no coverage under any of the applicable policies, Alaska National is entitled to reimbursement of these costs under this provision.

## IV. CAUSE OF ACTION

4.1   Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Alaska National requests that the Court enter judgment that (1) there is no coverage under either the CGL Policies or the CLU Policies for the claims against NSF and Mortenson in the Underlying Arbitration; (2) Alaska National has no duty to defend or indemnify NSF or Mortenson with respect to the claims against them in the Underlying Arbitration; and (3) Alaska National is entitled to reimbursement of the defenses it paid and continues to pay on behalf of NSF and Mortenson.

---

[3] This policy language is taken from the 2015-16 CGL Policy.

## V. REQUEST FOR RELIEF

Alaska National prays for judgment against Defendants declaring:

A.  There is no coverage under either the CGL Policies or the CLU Policies for the claims against NSF and Mortenson in the Underlying Arbitration;

B.  Alaska National has no duty to defend or indemnify NSF or Mortenson with respect to the claims against them in the Underlying Arbitration;

C.  Alaska National is entitled to reimbursement of the defenses it paid and continues to pay on behalf of NSF and Mortenson.

In addition, Alaska National requests the fees and costs it incurred in bringing this action, along with such other and further relief as the Court deems just and appropriate.

DATED: January 5, 2023

BULLIVANT HOUSER BAILEY PC


By */s/ Matthew J. Sekits*
Matthew J. Sekits, WSBA #26175
E-mail: matthew.sekits@bullivant.com


By */s/ Valerie J. Garcia*
Valerie J. Garcia, WSBA #60230
E-mail: valerie.garcia@bullivant.com

Attorneys for Plaintiff Alaska National Insurance Company

4892-5240-5573.1